Nos. 14-2256(L) & 14-2296

───────────────

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

───────────────

KNOX ENERGY, LLC and CONSOL ENERGY, INCORPORATED,

*Plaintiffs-Appellees*,

v.

GASCO DRILLING, INC., a Virginia Corporation,

*Defendant-Appellant*.


KNOX ENERGY, LLC and CONSOL ENERGY, INCORPORATED,

*Plaintiffs-Cross-Appellants*,

v.

GASCO DRILLING, INC., a Virginia Corporation,

*Defendant-Cross-Appellee*.

───────────────

On Appeals from the United States District Court
for the Western District of Virginia (Abingdon), Case No. 1:12-cv-00046-JPJ-PMS

───────────────

## PAGE-PROOF OPENING BRIEF FOR
## DEFENDANT-APPELLANT GASCO DRILLING, INC.

───────────────

DANIEL G. BIRD
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Defendant-Appellant-
Cross-Appellee*

April 6, 2015

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-2256__    Caption: __Knox Energy, LLC v. Gasco Drilling, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Gasco Drilling, Inc.__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?  ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Benjamin A. Street                        Date:        11-28-2014

Counsel for: Gasco Drilling, Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on _____11-28-2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

H. David Gibson                    Gentry Locke Rakes & Moore
MIchael J. Finney                  800 SunTrust Plaza
Abigail E. Murchison               P.O. Box 40013
James J. O'keeffe                  Roanoke, VA 24022-0013
J. Scott Sexton

/s  Benjamin A. Street                              11-28-2014
_____                    _____
       (signature)                                      (date)

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................vi

INTRODUCTION ........................................................................1

JURISDICTION..........................................................................4

ISSUES PRESENTED FOR REVIEW ....................................................4

STATEMENT OF THE CASE................................................................5

    I.     FACTUAL BACKGROUND ........................................................6

          A.    The 2008 Drilling Contract ........................................7

          B.    Consol Makes a "Major Change" in Procurement Practices ........................................................10

          C.    Consol Publicly Discloses Its Practice of Entering Take-or-Pay Contracts ........................................10

          D.    The 2011 Addendum........................................................11

                1.    Gasco Receives, Confirms, and Signs the Addendum........................................................11

                2.    Terms of the Addendum ........................................13

                3.    Consol Executes the Addendum....................................13

           E.    Performance, Invoicing, and Consol's Breach ........................14

    II.    PRE-TRIAL PROCEEDINGS ........................................16

          A.    Consol's Motion for Judgment on the Pleadings......................16

          B.    Summary Judgment Motions ....................................16

          C.    Gasco's Motion *in Limine*........................................18

    III.    TRIAL ........................................................................18

IV.    RULE 50 OPINION .................................................................21

SUMMARY OF ARGUMENT ...............................................................24

ARGUMENT ....................................................................................27

I.    GASCO PRESENTED SUFFICIENT EVIDENCE OF
      MUTUAL ASSENT .....................................................................27

      A.    Standard of Review .......................................................27

      B.    The Evidence Adduced at Trial Was Far More Than
            Necessary for a Reasonable Jury To Find Mutual
            Assent ...........................................................................27

            1.    Mutual Assent Is Determined Objectively
                  Based on the Parties' Outward Manifestations
                  of Intent with Each Other ..................................27

            2.    Gasco Presented Ample Evidence of Mutual
                  Assent .................................................................31

            3.    The District Court's Decision Undermines
                  Contract Certainty...............................................34

      C.    The District Court Committed Legal Error in
            Granting Consol's Rule 50(a) Motion .......................36

            1.    Contrary to Virginia Law, the District Court
                  Relied on Consol's Purported Mistake................36

            2.    Contrary to Virginia Law, the District Court
                  Erroneously Attempted To Interpret the
                  Addendum............................................................38

                  a.    There was no need for the court to
                        interpret the Addendum........................38

                  b.    In any event, the only reasonable
                        interpretation of the Addendum is that
                        it renewed the 2008 Drilling Contract in
                        2011 ........................................................39

3.    The District Court Misapprehended and Misapplied the Doctrine of "Misunderstanding"......................................43

4.    Virginia Law Precluded the District Court from Resolving Mutuality ...............................45

5.    The District Court Misapplied Rule 50 .........................46

II.    THE DISTRICT COURT ERRED IN GRANTING CONSOL PARTIAL SUMMARY JUDGMENT..............................49

III.    THE DISTRICT COURT ERRED IN DENYING SUMMARY JUDGMENT TO GASCO............................................52

A.    Standard of Review..................................................52

B.    As a Matter of Law, There Was No Mutual Mistake ..............52

C.    As a Matter of Law, Gasco Did Not Commit Fraud................54

D.    Virginia Does Not Recognize Consol's Unilateral Mistake as a Defense ................................................56

IV.    THE DISTRICT COURT ERRED IN DENYING GASCO'S MOTION *IN LIMINE* TO EXCLUDE INADMISSIBLE PAROL EVIDENCE ..............................58

A.    Standard of Review..................................................58

B.    Evidence of Consol's Alleged "Mistake" Was Inadmissible ..........................................................58

C.    Evidence of Gasco's Privileged Communications Was Inadmissible ..........................................................59

CONCLUSION...........................................................61

REQUEST FOR ORAL ARGUMENT ..................................62

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

## CASES

*Adams v. Doughtie*, 63 Va. Cir. 505 (Fairfax Cnty. 2003) ................................. 34-35

*Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818 (Va. 1981) ............................21, 38

*Ashby v. Dumouchelle*, 40 S.E.2d 493 (Va. 1946) ...................................................57

*Atalla v. Abdul-Baki*, 976 F.2d 189 (4th Cir. 1992) ................................................49

*Ayers v. Mosby*, 504 S.E.2d 845 (Va. 1998) ...........................................................32

*Baum v. Whitehorse Marine, Inc.*, 46 Va. Cir. 527 (Norfolk 1996) .......................29

*Brown v. McLean*, 159 F.3d 898 (4th Cir. 1998) .....................................................52

*Brown v. Slenker*, 220 F.3d 411 (5th Cir. 2000) .................................................34, 46

*Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928 (Va. 1991) ............................37

*Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979) .........................29

*City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*,
    628 S.E.2d 539 (Va. 2006) ..............................................................................39

*Cole v. Cole*, 18 Va. Cir. 362 (Richmond 1989) ......................................................37

*Combs v. Dickenson-Wise Med. Group*, 355 S.E.2d 553 (Va. 1987).....................46

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)........................................58

*Corbett v. Bonney*, 121 S.E.2d 476 (Va. 1961) .......................................................56

*Costello v. Larsen*, 29 S.E.2d 856 (Va. 1944) ........................................................55

*Cranbrook Investors, Ltd. v. Great Atl. Mgmt. Co.*, No. 98-2631,
    1999 WL 1020534 (4th Cir. Nov. 10, 1999) .............................................34, 52

*Dart Drug Corp. v. Nicholakos*, 277 S.E.2d 155 (Va. 1981) .................................42

*Doswell Ltd. P'Ship v. Virginia Elec. & Power Co.*, 468 S.E.2d 84
    (Va. 1996) ........................................................................................................42

*First Nat'l Exch. Bank v. Roanoke Oil Co.*, 192 S.E. 764 (Va. 1937) ..............28, 51

*Fox-Sadler Co. v. Earl E. Norris Roofing Co.*, 327 S.E.2d 95
    (Va. 1985) ...............................................................................37, 52, 53, 58

*General Ins. of Roanoke, Inc. v. Page*, 464 S.E.2d 343 (Va. 1995) .......................35

*Geoghegan Sons & Co. v. Arbuckle Bros.*, 123 S.E. 387 (Va. 1924).....................46

*Government Emps. Ins. Co. v. Moore*, 580 S.E.2d 823 (Va. 2003)............40, 41, 42

*Howard P. Foley Co. v. Phoenix Eng'g & Supply Co.*, 819 F.2d 60
    (4th Cir. 1987) .......................................................................30, 31, 32

*Iowa-Des Moines Nat'l Bank v. Insurance Co. of N. Am.*, 459 F.2d 650
    (8th Cir. 1972) ...............................................................................43

*Jessee v. Smith*, 278 S.E.2d 793 (Va. 1981) ....................................................34, 35

*Langman v. Alumni Ass'n of Univ. of Virginia*, 442 S.E.2d 669
    (Va. 1994) .......................................................... 35, 37, 52, 53, 56, 57

*Lucy v. Zehmer*, 84 S.E.2d 516 (Va. 1954)............................. 21, 27, 28, 29, 30, 33

*Marefield Meadows, Inc. v. Lorenz*, 427 S.E.2d 363 (Va. 1993) ...........................31

*Marshall v. Cundiff*, 180 S.E.2d 229 (Va. 1971) .....................................................57

*Martin & Martin, Inc. v. Bradley Enters., Inc.*, 504 S.E.2d 849
    (Va. 1998) ...............................................................................42, 50

*Meade v. Wallen*, 311 S.E.2d 103 (Va. 1984) ........................................................35

*Metro Realty of Tidewater, Inc. v. Woolard*, 286 S.E.2d 197
    (Va. 1982) ...............................................................................32, 35, 37, 56

*Metrocall of Delaware, Inc. v. Continental Cellular Corp.*,
    437 S.E.2d 189 (Va. 1993) ............................................................54

*Midlothian Coal Mining Co. v. Finney*, 59 Va. 304 (1868) .......................49, 50, 51

*Moorman v. Blackstock, Inc.*, 661 S.E.2d 404 (Va. 2008) ......................................29

*Musgrave v. HCA Mideast, Ltd.*, 856 F.2d 690 (4th Cir. 1988) ............ 46, 50, 51-52

*Nationwide Mut. Ins. Co. v. Muncy*, 234 S.E.2d 70 (Va. 1977) ................28, 37, 44, 53, 55, 56, 57

*Nehi Bottling Co. v. All-American Bottling Corp.*, 8 F.3d 157 (4th Cir. 1993) ......................................................................34, 46

*Noland Co. v. Graver Tank & Mfg. Co.*, 301 F.2d 43 (4th Cir. 1962) ...................28

*Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772 (4th Cir. 1990) ................59, 60

*Projects Mgmt. Co. v. DynCorp Int'l LLC*, 734 F.3d 366 (4th Cir. 2013) ...............58

*Providence Square Assocs., LLC v. G.D.F., Inc.*, 211 F.3d 846 (4th Cir. 2000) ...........................................................................42

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ..................33, 47

*Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344 (Va. 1998) ..............................................................................54

*Sales v. Grant*, 158 F.3d 768 (4th Cir. 1998)..........................................................27

*Shenandoah Valley R.R. Co. v. Dunlop*, 10 S.E. 239 (Va. 1889) ...........................35

*SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co.*, 508 F. App'x 243 (4th Cir. 2013)........................................................50, 58

*The Falls Church v. The Protestant Episcopal Church in the United States*, 740 S.E.2d 530 (Va. 2013), *cert. denied*, 134 S. Ct. 1513 (2014)..............................................................................................29

*Transit Cas. Co. v. Hartman's, Inc.*, 239 S.E.2d 894 (Va. 1978)...........................39

*Turner & Happersett v. Hall & Connor*, 104 S.E. 861 (Va. 1920) .........................46

*Virginia Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262 (4th Cir. 1971) ...........................................................52, 53, 55, 56

*Ward v. Ward*, 387 S.E.2d 460 (Va. 1990).....................................................53, 57

*Wells v. Weston*, 326 S.E.2d 672 (Va. 1985)...........................................28, 31, 44

*Wilson v. Wilson*, No. 1958-03-2, 2004 Va. App. LEXIS 17 (Va. Ct. App. Jan. 13, 2004).......................................................................37

*Winn v. Aleda Constr. Co.*, 315 S.E.2d 193 (Va. 1984) ...........................................42

*Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir.),
    *cert. denied*, 135 S. Ct. 113 (2014)................................................................47

## STATUTES AND RULES

28 U.S.C. § 1291 ....................................................................................................4

28 U.S.C. § 1332(a)................................................................................................4

Fed. R. App. P.:

    Rule 3(a) ...........................................................................................................4

    Rule 4(a)(1)(A) ..................................................................................................4

Fed. R. Civ. P.:

    Rule 50.................................................................... 3, 21, 25, 36, 44, 46, 60

    Rule 50(a) ......................................................... 1, 4, 24, 33, 34, 36, 46

Fed. R. Evid.:

    Rule 401 .........................................................................................................58

    Rule 403 .........................................................................................................58

## OTHER MATERIALS

3 *Corbin on Contracts* (1960)...............................................................................43

2 Richard A. Lord, *Williston on Contracts* (4th ed. 2013) ..........................23, 43, 44

Restatement (First) of Contracts (1932) ...............................................................45

# INTRODUCTION

This appeal arises from the district court's mid-trial decision holding that Appellees Knox Energy, LLC ("Knox") and Consol Energy, Inc. (together, "Consol") did not assent to the terms of a written contract that Consol itself drafted, proposed, and signed. The court entered judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50(a), holding that no reasonable jury could find that Consol had a valid contract with Appellant Gasco Drilling, Inc. ("Gasco"). Gasco appeals that erroneous decision and three others that preceded trial.

Gasco is in the business of drilling gas wells. In 2008, the parties entered a drilling contract containing a "take-or-pay" provision, which functioned like a retainer: Gasco promised to be available to drill at Consol's call, and Consol promised to pay Gasco for 328 days of the year, whether or not Gasco drilled. The contract had a two-year term.

In 2011, Consol contacted Gasco to renew the 2008 Drilling Contract. Consol emailed an Addendum that would "modify" the term to be for one year, and "extend" the term automatically year-to-year, unless either party terminated. Gasco asked Consol to confirm the specific contract it wished to renew, and two different Consol employees sent back copies of the 2008 Drilling Contract. Gasco signed the Addendum and told Consol it was "standing by and ready to perform work under this agreement at Consol's call." Consol signed as well. Gasco

performed under the renewed contract by maintaining two rigs and retaining drilling personnel.  Consol never requested any drilling and refused to pay Gasco under the contract.

Consol claims the parties' contractual dealings were a mistake.  Consol supposedly implemented an automatic-renewal program for certain non-drilling contracts and mistakenly included the 2008 Drilling Contract among them; it claims it mistakenly sent the Addendum to Gasco, twice mistakenly identified the 2008 Drilling Contract as the contract subject to renewal, and then mistakenly signed the Addendum – all supposedly without realizing it was renewing a drilling contract.  Whether the jury would believe that account, which was uncorroborated by any documents, will never be known, for the district court took the case from the jury and held that, as a matter of law, Consol did not assent to the terms of a contract that it drafted and signed.

That was error.  In Virginia, mutual assent turns on the objective manifestations communicated between the parties during negotiations; any purported "mistake" is irrelevant.  Here, every relevant communication between the parties confirmed that both intended to renew the 2008 Drilling Contract.  In holding that no reasonable jury could find for Gasco, the district court misapprehended black-letter Virginia law, improperly focused on Consol's

subjective intent, and ran afoul of Rule 50. This Court should reverse and remand for a new trial.

The Court should also reverse three of the district court's other pre-trial rulings. First, the court erroneously granted Consol partial summary judgment, holding that, when parties renew a previously amended contract, they necessarily renew it "as amended," even if they did not say so. However, where, as here, the renewal is silent about a prior amendment, Virginia law requires consideration of Gasco's parol evidence regarding the parties' intent.

Second, the court improperly denied Gasco's motion for summary judgment on Consol's mistake and fraud claims. Given the undisputed evidence that Gasco read, understood, and intended to renew the 2008 Drilling Contract, and that Consol did not carefully read the agreement it drafted, Consol's mistake and fraud claims fail as a matter of law.

Third, in denying Gasco's motion *in limine*, the court erred in admitting evidence of Consol's purported mistake and of Gasco's privileged communications concerning the Addendum – evidence on which the court itself improperly relied to express "suspicion" about the "real facts" of the case.

If affirmed, the judgment below will have profoundly negative consequences for the certainty of signed contracts across the Commonwealth. Unless reversed, the decision will erode fundamental principles of contract law and render countless

contracts vulnerable to challenge on the ground that, in hindsight, the party at the losing end of an economically risky bargain could not possibly have intended to enter the deal that it did.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332(a) over this civil dispute between diverse parties concerning a sum exceeding $75,000.  On October 16, 2014, after granting Consol's Rule 50(a) motion during a jury trial, the court entered final judgment.  DE284.  On November 14, 2014, Gasco filed a notice of appeal from the final judgment.  DE290; Fed. R. App. P. 3(a), 4(a)(1)(A).  This Court's jurisdiction over Gasco's appeal rests on 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.    Where a party drafted, proposed, and signed an amendment to modify and extend the term of an existing contract, could a reasonable jury find objective manifestations of the party's contractual assent under Virginia law?

2.    When parties agree to renew a contract, but are silent on whether they are renewing it as previously amended or as it originally stood, does Virginia law require consideration of parol evidence to determine the parties' intent?

3.    Under Virginia law, where a sophisticated party drafted, proposed, and signed a contract that it subsequently claims it did not intend to enter, is the

counterparty – who signed and intended to enforce the contract – entitled to summary judgment on claims of mutual mistake, fraud, and unilateral mistake?

4.    Under Virginia law, did the district court err in admitting and relying upon parol evidence concerning (i) a party's subjective intent not to enter a signed contract, absent fraud or mistake, and (ii) the subject of attorney-client communications, which could be probative only by drawing a prejudicial inference about the content of the communications?

## STATEMENT OF THE CASE

In 2013, Knox sued Gasco for declaratory judgment, claiming the parties did not mutually assent in 2011 to renew a 2008 drilling contract pursuant to an Addendum that Consol drafted, proposed, and signed.  Knox also claimed the Addendum was unenforceable due to mistake and fraud.  Gasco counterclaimed for contract breach.  The district court denied Gasco's motion for summary judgment on fraud and mistake, granted partial summary judgment to Consol regarding the scope of potential damages, and denied Gasco's motion *in limine* to exclude extrinsic evidence.  At the close of Gasco's case, the court entered JMOL for Consol based on lack of mutual assent.  Gasco appeals the district court's JMOL, summary judgment, and *in limine* rulings.

## I.    FACTUAL BACKGROUND

Clyde Ratliff is President of Gasco.  9/15Tr. 101.  A native of Buchanan County, Virginia, and a Vietnam veteran, Ratliff founded Gasco in 1989 with his brother.  9/15Tr. 92-95.  Gasco remains a family-owned and -operated company that drills gas wells.  9/15Tr. 95, 101.

Consol is a large, publicly traded energy company.  9/16Tr. 156; PX15, at 59.  Among other things, Consol hires drilling companies, like Gasco, to extract natural gas from Consol's reserves.  9/15Tr. 95.

Drilling contracts typically take two forms:  a "footage contract" pays a fixed amount per *foot* drilling; a "day rate contract" pays a fixed amount per *day* drilling.  9/15Tr. 103, 107.[1]  When a contractor is on location and ready to drill, unanticipated delays typically are compensated as "standby" time.  9/15Tr. 107-10.  A footage contract pays a fixed amount per hour of standby time, whereas a day-rate contract pays a fixed amount per day spent on standby.  *Id.*  For a contractor drilling under a standard day-rate contract, "you're getting paid regardless of whether you're drilling or waiting," until the well is complete.  9/15Tr. 110.

In addition, contracts sometimes contain a "take-or-pay" provision, which operates like a retainer:  the contractor is paid to be available to work, regardless

---

[1] Modern gas well drilling typically involves drilling a vertical section down to a "kick off point," and then curving to drill horizontally into "pay zones." 9/15Tr. 95-96, 104.

of whether any drilling occurs. 9/15Tr. 111-12. Under a take-or-pay contract, the standby rate applies both when the contractor is onsite and waiting to drill, and when it is offsite but available to drill.

Gasco and Consol have done business since the mid-1990s, typically through Consol subsidiaries, like Knox. 9/15Tr. 76, 101-03, 117; 9/16Tr. 29. All of their contracts have been "open," meaning each one "was always open for additional drilling down the road," after expiration, if the parties desired. 9/16Tr. 42, 71. The vast majority of the parties' contracts were, in fact, re-used after expiration of their initial term. 9/16Tr. 42, 71, 105-06; *see, e.g.*, PX45 (sample post-termination extension by letter agreement).

### A.    The 2008 Drilling Contract

In January 2008, Gasco entered a Daywork Drilling Contract with Knox to drill wells in eastern Tennessee using one drilling rig. PX42; 9/15Tr. 102. The contract included a daily drilling rate of $11,800[2] and a standby rate of $10,800. PX42, at 1-2.

In June 2008, Kent Wright and Randy Albert of Knox told Ratliff they "wanted a take or pay contract" because they "wanted a guarantee" of having high caliber drilling rigs "available at their call." 9/15Tr. 97, 105. They wanted a second drilling rig under contract and coverage in Kentucky, Virginia, and West

---

[2] For simplicity, this brief refers to drillings rates "with pipe," as the difference between "with pipe" and "without pipe" is immaterial to this appeal.

Virginia.  9/15Tr. 106.  The parties signed a new contract memorializing those terms.  PX1 (the "2008 Drilling Contract").

Section 27 of the 2008 Drilling Contract contains the take-or-pay provision, which required Consol to "pay for 328 days per 12-month period" at a standby rate of $10,800 for each drilling rig.  PX1, at 6.  Gasco pledged to "have rig[s] available to work"; otherwise, the rate would be "adjusted" for unavailable days. *Id.*  Any days spent doing vertical drilling would be "deducted from the 328 day total." *Id.*  Without knowing how many days its rigs would be available or Knox would request drilling, Gasco had no way of knowing in advance how much take-or-pay compensation it would receive.  9/15Tr. 112-13.  The contract had a two-year term and provided that, in the event of early termination, Knox "shall pay" Gasco "a sum equal to the standby time rate . . . for a period of 328 days."  PX1, at 2-3.

In September 2008, Gasco leased property in Tennessee to store equipment for the 2008 Drilling Contract.  9/15Tr. 127-28.  Gasco drilled 20 wells in 2008 alone, and continued drilling until August 2010, when it renewed its property lease "in hopes of doing additional work" for Consol.  9/15Tr. 119, 126, 129.

Over the course of Gasco's performance, Gasco invoiced Consol, and Consol issued purchase orders to initiate payment.  9/15Tr. 153; 9/16Tr. 5; 9/17Tr. 21-22.  Gasco's invoices often included take-or-pay standby charges,

which Consol paid, in effect compensating Gasco for "not drilling." 9/16Tr. 117.

Consol's purchase orders identified the 2008 Drilling Contract using Consol's

internal reference: "Contract Purchase Order No. 4600000856." *See*, *e.g.*, PX23,

at 1; PX24, at 1; PX25, at 1; PX26, at 1; PX27, at 1; PX27(a), at 1; 9/16Tr. 140,

143.

The parties amended the 2008 Drilling Contract three times during its initial

term, each significantly benefiting Consol. In February 2009, Knox did not "have

any wells to drill" and for the first time faced the prospect of take-or-pay standby

charges. 9/15Tr. 120-22. At Wright and Albert's request, Ratliff agreed to accept

"consideration of $1.00" for a reduction of $8,000 per day in standby charges.

PX57. Although the rate was supposed to return to its original level when Gasco

recommenced drilling in March 2009, Gasco charged the reduced rate for the

duration of the contract. Ratliff has never intended to recover the additional

$8,000 per day for which Gasco could have invoiced Consol. 9/15Tr. 122-24;

9/16Tr. 18-19.[3]

---

[3] The 2008 Drilling Contract said nothing about when Gasco would invoice Consol. Gasco's practice was to invoice after completing a job. 9/16Tr. 19-20. In the case of standby time, Ratliff intended to invoice any such charges at the end of the contract term. 9/15Tr. 131. But, at the February 2009 meeting, Albert and Wright asked that Gasco send monthly invoices that included any standby charges. 9/15Tr. 131-32; 9/16Tr. 18-20. Gasco did so for the six-to-eight-month period that it charged standby time in 2009, but otherwise has never invoiced on a monthly basis. *Id.*

Three months later, again for $1.00 in consideration, Gasco agreed to reduce its drilling rates by up to $1,000.  PX31.  The reductions took effect May 1, 2009, and remained in "effect for the term of the Contract."  *Id.*

Then, in May 2010, the parties modified the remaining term of the contract by releasing one drilling rig upon completion of its final well and by providing that the second rig would "continue drilling under the Contract until the remaining five wells . . . are completed."  PX32 (alterations omitted); 9/15Tr. 124-25.

## B.    Consol Makes a "Major Change" in Procurement Practices

In 2009, Consol announced a "major change" to its business.  PX40, at 1. All new contracts would be procured by "supply chain" management.  9/16Tr. 45. Although that change did not affect performance of the 2008 Drilling Contract, it affected future contracts between the parties.  9/16Tr. 106-08.  Gasco would no longer negotiate new contracts with Albert, with whom Ratliff had worked for years.  9/16Tr. 50.

## C.    Consol Publicly Discloses Its Practice of Entering Take-or-Pay Contracts

The 2008 Drilling Contract was not Consol's only take-or-pay contract. In 2010 and 2011, Consol announced publicly its practice of strategically entering take-or-pay drilling contracts to minimize risk.  The company's Securities and Exchange Commission ("SEC") filings stated:  "We attempt to mitigate the risks involved with increased industrial activity by entering into 'take or pay' contracts

10

with [gas] well service providers."  PX15, at 47; PX16, at 43.  Consol recognized that such contracts "expose us to economic risk," including the risk of "hav[ing] to pay for services that we did not use" if "the price of natural gas declines" and "it is not economical to drill and produce additional natural gas."  PX15, at 47-48; PX16, at 43.  Consol nevertheless truthfully informed investors that "entering into 'take or pay' contracts" can be worth the risk.  PX15, at 47; PX16, at 43.

### D.    The 2011 Addendum

At the end of 2010, Gasco bid unsuccessfully for some of Knox's 2011 drilling work, which was awarded to Noah Horn Drilling.  9/15Tr. 132.  In the coming months, however, Ratliff – who knew Knox was planning more drilling in 2011 than Gasco had done in 2008 – learned that Noah Horn was "having lots of problems" keeping its rigs running.  9/16Tr. 57, 60-61.  Then, in June 2011, Consol emailed Gasco to renew the 2008 Drilling Contract.[4]

#### 1.    *Gasco Receives, Confirms, and Signs the Addendum*

On June 6, 2011, Janet Fahrenhold of Consol emailed Freda Rasnake, Ratliff's assistant, attaching an "Addendum" intended to "modify" and "extend" the term of Contract Purchase Order 4600000856 – the 2008 Drilling Contract.

---

[4] By that time, "[a]ll the people" at Knox who Ratliff knew "had moved on." 9/16Tr. 54, 108.  As Ratliff would soon learn, Todd Shumaker was now General Manager of Contract and Project Management in Consol's Supply Chain Management department, responsible for procuring drilling services and issuing purchase orders.  9/16Tr. 130-31, 148, 155-56; PX30, at 5.

PX3; PX3(a); 9/16Tr. 123; 9/17Tr. 11, 35.  Fahrenhold's email explained that, "because of changes" in Consol's database, it had "renumber[ed]" Gasco's contract "from 4600000856 to 5600000439."  PX3.

Ratliff was out of town when the Addendum arrived.  9/15Tr. 133. Rasnake telephoned, saying she "received this e-mail" and "[t]hey want to renew a contract."  *Id*.  Ratliff instructed her to "request a copy of the contract that they want to renew."  *Id.*  Rasnake requested "a copy of Contract #4600000856" on June 6 and again on June 8.  PX4; PX5; 9/15Tr. 136.

Consol replied to Rasnake with two separate but identical responses.  Erin Bywaters, from Consol's Material & Supply Chain Management, forwarded an internal Consol email signed by Shumaker, PX6, which attached a copy of the 2008 Drilling Contract, PX6(b), and an internal document identifying that contract as "Contract number[ ] 5600000439" and identifying Shumaker as the "Buyer," PX6(a); 9/16Tr. 123-24.  Minutes later, Fahrenhold forwarded Bywaters' email to Rasnake, along with a highlighted version of the Addendum indicating the blanks to be filled in by Gasco, including the effective date.  PX7; PX7(a)-(c); 9/16Tr. 124-25.

Ratliff returned to the office and found the documents on his desk.  9/15Tr. 136.  He read the Addendum and the 2008 Drilling Contract.  9/16Tr. 20-21, 28, 42.  He filled in the Addendum's blanks, including the effective date, and signed

it on June 13.  PX8, at 2; 9/16Tr. 25, 142.  From the moment he signed, Ratliff

intended to drill for Consol.  9/16Tr. 119.  Gasco returned the signed Addendum

to Consol the next day saying, "Gasco is standing by and ready to perform work

under this agreement at Consol's call."  PX8.

### 2.    *Terms of the Addendum*

As filled in by Ratliff, the Addendum's effective date is June 13, 2011.

PX8, at 2.  It defines the "Contract Purchase Order" as number 5600000439, *id.*,

which is the 2008 Drilling Contract, 9/17Tr. 11.  The Addendum states that Gasco

and Consol both "intend[] to be legally bound" by the Addendum and "caused

their duly authorized representatives to execute this agreement intending it to be

effective on the effective date."  PX8, at 2.  The parties "agree[d] to modify the

'Term' provision" of the 2008 Drilling Contract "to read" as follows:  "the term

of this agreement shall be for one year from the date set forth above and shall be

automatically extended for one year terms" absent 30-days' written termination

notice "before the end of the current one year term."  *Id.*

### 3.    *Consol Executes the Addendum*

The Addendum signed by Gasco came to Shumaker to review and execute.

Shumaker, who had experience negotiating contracts for Consol, previously had

asked Consol's legal department to draft the Addendum.  9/16Tr. 132, 144.  He

had read and approved the original draft of the Addendum, and he scanned Gasco's

executed version "to make sure the blanks were filled in." 9/16Tr. 150-51. Shumaker then signed the Addendum by stamping his name on it and handwriting the date, July 11, 2011. PX11(b); 9/16Tr. 133, 149.

Two weeks later, at Fahrenhold's request, Gasco provided contact information for Gasco personnel who handled various matters, such as purchase orders and invoices. PX9; PX10; PX10(a). The next day, Fahrenhold returned the "fully executed" Addendum. PX11; PX11(b). Ratliff, who did not know Shumaker, looked him up and saw that – consistent with what Ratliff had learned about Consol's new procurement process – Shumaker was manager of Consol's supply chain department. 9/16Tr. 45-46, 52.

### E.    Performance, Invoicing, and Consol's Breach

Gasco designated two drilling rigs for the renewed contract and kept them on standby with personnel ready to drill at Consol's call. 9/16Tr. 9, 119-20. Gasco renewed its Tennessee lease, maintained its rigs and other equipment there, and retained employees essential for performing the renewed contract. 9/16Tr. 9-11, 14-15, 46-50. But Consol never asked Gasco to perform any drilling. 9/16Tr. 15.

When neither party gave notice of termination in May 2012, the Addendum's automatic-renewal provision triggered a second year of the contract. 9/16Tr. 83-84, 118. On June 13, 2012, one year after the Addendum's effective

14

date, Gasco invoiced Consol under the take-or-pay provision:  328 days with two

rigs on standby at $10,800 per day, per rig, for a total of $7,084,800.  PX58;

9/16Tr. 15.

When Consol received the invoice, Shumaker claimed to be "shock[ed]" and

"confused," but "figured out what happened" simply by "read[ing the] addendum."

9/16Tr. 177.  Consol nevertheless sent a letter claiming "there is no contract"

because the Addendum "was sent by mistake," and then "signed and returned to

Gasco by mistake."  DX31.  Consol refused to pay the invoice.  *Id*.  Gasco

responded that it was "surprised" by Consol's letter and hoped that, in light of the

parties' "longstanding business relationship," they could resolve the dispute "short

of litigation."  DX32, at 1-3.

In response, Knox sued Gasco, DE1, and sent a letter three days later,

9/16Tr. 16; PX60.  Consol accused Gasco of engaging in "stealth" in an elaborate

"plan to take advantage of a clerical mistake made by a temporary employee."

PX60, at 1.  Consol denied any "meeting of the minds about extending the terms"

of the 2008 Drilling Contract and, to the extent Gasco disagreed, "terminated" the

contract.  PX60, at 2.

In light of the parties' communications in June 2011, Ratliff was offended

by Consol's accusations of fraud and wrongdoing.  He sent an invoice for a second

year of standby charges pursuant to the "early termination" provision of the renewed contract.  9/16Tr. 17-18; PX59.  Consol refused to pay.  9/16Tr. 20.

## II.     PRE-TRIAL PROCEEDINGS

Knox amended its complaint to seek rescission and reformation on multiple grounds, including lack of assent, mutual mistake, fraud, and unilateral mistake. DE17.  Gasco counterclaimed against Consol seeking $14 million for breach of contract.  DE22.

### A.     Consol's Motion for Judgment on the Pleadings

Consol moved for judgment on the pleadings on Gasco's counterclaim, arguing that, if the Addendum created a new one-year term "from the date set forth above," it was referring to July 7, 2008 – the original commencement date of the 2008 Drilling Contract – not the Addendum's effective date of June 13, 2011. DE85, at 6-7.  According to Consol, the Addendum therefore created a contract with a term that already expired and was a nullity.  *Id.* at 7-8.  The district court denied Consol's motion, holding that the "date set forth above" language was ambiguous.  DE121, at 6.

### B.     Summary Judgment Motions

Both parties sought summary judgment on Consol's claims of mutual mistake, fraud, and unilateral mistake.  Among other things, Consol relied on the fact that Gasco had privileged attorney-client communications concerning the

Addendum as evidence that Gasco knew about Consol's alleged mistake. DE156, at 18, 23, 27; 8/20Tr. 50-51, 64. At the summary judgment hearing, the district court itself expressed "suspicion" about Ratliff's communications with Gasco's attorney, Randy Bolling:

> [It] seems reasonable to me [Ratliff] knew what was happening, he goes to Mr. Bolling says, look, look at this. Mr. Bolling says, does a little research, and says to him . . . it doesn't matter, you know, we just need to dummy up here, not say anything and, you know, you may get a big windfall here. . . . Now, you know, that's my suspicion. Again, you know, I don't find facts, but that's my suspicion about what happened in this case. . . . I think that's probably what the real facts are. I don't know. I don't know Mr. Ratliff, I don't, obviously I don't know in his mind; all I know is what I read. But that seems to me to be somewhat a logical conclusion from the facts.

8/20Tr. 69. The court denied summary judgment on mistake and fraud in light of "factual issues." 8/20Tr. 77.

Consol also argued that, because the May 2010 amendment released one drilling rig from the contract, any subsequent renewal in 2011 necessarily included only a single drilling rig, thereby cutting in half Gasco's damages. DE156, at 51. The district court agreed, holding that, if the Addendum renewed the 2008 Drilling Contract, it renewed the contract as amended, not as it originally stood. DE236, at 2.

17

### C.    Gasco's Motion *in Limine*

Gasco moved *in limine* to exclude argument and evidence regarding Consol's alleged mistake.  DE242, at 10-14, 22-24.  The court denied Gasco's motion, imposing no limitations on parol evidence.  9/9Tr. 31-32.

Gasco also moved to exclude any mention of Gasco's privileged Addendum communications.  DE242, at 6-10.  Consol intended to use an exhibit identifying the date, form, and participants involved in 14 such communications.  DE248-3.  Gasco argued that its privileged Addendum communications could be relevant only if an inference were drawn about their substance, which would be improper and unfairly prejudicial.  DE242, at 6-10.  The district court disagreed and denied Gasco's motion.  DE258, at 6-7.

## III.   TRIAL

At trial, Gasco acted as plaintiff and called Ratliff, Rasnake, and Shumaker as witnesses.  In light of the district court's *in limine* rulings, the parties introduced parol evidence regarding numerous disputed issues.

Consol's purported "mistake".  In light of Gasco's Addendum-related communications with Consol, Ratliff never thought Consol made a mistake.  9/16Tr. 24, 90; *see supra* pp. 11-14.  Shumaker, however, testified – without any corroborating documents – that Consol never intended to enter a contract with Gasco in 2011.  9/16Tr. 148, 179.  He claimed the Addendum was part of an

"evergreen" program devised for Contract Purchase Orders; that the 2008 Drilling Contract was *not* a Contract Purchase Order (and that all of Consol's documents calling it such were "mistakes"); that, although Consol deliberately put the 2008 Drilling Contract in its database, Consol forgot about the contract when it implemented the "evergreen" program; that Consol mistakenly sent the Addendum to Gasco and then mistakenly signed it.  9/16Tr. 148, 159, 161-68; 9/17Tr. 13-19.

Gasco's billing practices.  Consol disputed Gasco's billing practices and contended that Gasco's decision to send a single annual invoice in 2012 for take-or-pay standby charges reflected an intent to prevent Consol from discovering its own alleged mistake and to ensure automatic contract renewal, thereby doubling Gasco's damages.  9/15Tr. 130-32; 9/16Tr. 18-20, 33, 76; *supra* note 3.

Gasco's failed contract bids.  Consol disputed whether its rejection of other Gasco drilling bids should have caused Gasco to realize Consol's allegedly mistaken belief about the Addendum, and it asserted that Gasco should have reminded Consol about the Addendum when Gasco bid for other work.  9/16Tr. 77-83.

Gasco's attorney-client communications.  Consol relied on the fact that Gasco discussed the Addendum with its attorney to dispute Gasco's knowledge and intent regarding the Addendum.  9/15Tr. 87-89; 9/16Tr. 73-74, 81, 84; DX36.

19

Gas market conditions and hedging.  Consol relied on the decline in gas prices after 2008 to argue that Gasco should have known Consol could not have intended to renew a take-or-pay contract in 2011.  9/16Tr. 34-35.  Gasco relied on Consol's SEC filings and evidence that, even when market prices are low, operators like Consol typically "hedge" by locking-in higher prices years in advance, and that operators' lease commitments often require them to drill, regardless of market price, or risk losing the lease.  9/16Tr. 34-35, 111-12, 120-22.

Consol's "Terms & Conditions Mailer".  Consol disputed whether Gasco should have known the Addendum purportedly did not apply to the 2008 Drilling Contract.  Shumaker testified that a "contract purchase order" is the same as a "terms and conditions agreement," and that a "Terms & Conditions Agreement Policy" that Consol sent to Gasco by U.S. mail on June 6, 2011, indicated that "terms and conditions agreements" apply only to non-bid work.  9/16Tr. 158-59; 9/17Tr. 30-31; PX30 (the "Terms & Conditions Mailer").  Gasco asserted that the "Terms & Conditions Mailer" was irrelevant to the Addendum:  the documents arrived separately and did not refer to each other; Ratliff did not relate the documents to each other; the Terms & Conditions Mailer differentiated between "contract purchase orders" and "terms and conditions agreements";[5] and Shumaker

---

[5] The Terms & Conditions Mailer states that Consol "*requires*" all contractors to "have a fully executed contract purchase order"; by contrast, "a Terms & Conditions Agreement *can* be put in place" by "select contractors"

admitted Consol never told Gasco that Consol believed "contract purchase orders" are the same as "terms and conditions agreements."  9/16Tr. 62; 9/17Tr. 31.

At the close of Gasco's case, Consol moved for JMOL on the ground that Gasco failed to prove mutual assent.  9/17Tr. 53-84.  The district court granted Consol's motion, with an opinion to follow.  9/17(2)Tr. 2.

## IV.    RULE 50 OPINION

The district court issued its opinion on October 16, 2014.  "For a legally enforceable contract to exist," the court explained, "'there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances.'" DE283, at 15 (quoting *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981)).  The court recognized that "[m]utual assent is an objective standard that 'imputes to a person an intention corresponding to the reasonable meaning of his words and acts.'"  *Id.* (quoting *Lucy v. Zehmer*, 84 S.E.2d 516, 521 (Va. 1954)).

The court began its analysis, however, by focusing on Consol's purported mistake.  "It is clear," the court found, that Consol "inadvertently sent" the Addendum by "mistake."  *Id.* at 16-17.

Then, after reviewing extrinsic evidence, the court concluded that "the issue currently before this court is a matter of contract interpretation based on the language of the Addendum and the extrinsic evidence presented at trial."  *Id.* at 20.

for "non-bid work" "[i]n order to accommodate routine and urgent requirements." PX30, at 2-3 (emphases added).

The court held that the Addendum, "[s]tanding alone," was ambiguous regarding the meaning of "the date set forth above," and that "both parties presented two potentially reasonable meanings." *Id.* at 21, 25.

The court then identified four ways that it believed extrinsic evidence suggested Consol did not intend to renew the 2008 Drilling Contract. *First*, with respect to the reference to "your current Contract Purchase Order" in Consol's June 6 cover email, the court noted that the word "current" means "occurring in or existing at the present time," which "indicates that the Addendum is intended to apply to existing or outstanding contracts, not completed or terminated contracts." *Id.* at 21-22. *Second*, the court observed that, as described in the June 6 cover email, the "purpose" of the Addendum was only to extend the existing term of a Contract Purchase Order, not to create "a new term." *Id.* at 22. *Third*, the court found that the reference to "Terms and Conditions Contract" in the subject line of Consol's June 6 email incorporated the Terms & Conditions Mailer, which evidenced "that the documents are not intended to apply to competitively bid contracts." *Id.* at 22-23. *Fourth*, the court noted that the Addendum was unlike a 2003 post-termination extension the parties accomplished by letter agreement, which made reference to "Contract Renewal" for a "defined one-year term." *Id.* at 23-24.

The court then turned to secondary sources for a legal principle to apply when "the parties' manifestations have more than one reasonable meaning." *Id.* at 25. Invoking the doctrine of misunderstanding, the court held that, where two parties have different, but reasonable, interpretations of an ambiguous contract, and "'the offeree's knowledge of the surrounding circumstances is such that'" it knew or should have known of the ambiguity, then, "'if the parties' meanings do not coincide, no contract will exist.'" *Id.* (quoting 2 Richard A. Lord, *Williston on Contracts* § 6:59 (4th ed. 2013)).

The court found "sufficient extrinsic evidence" to conclude "that a reasonable person would have known that the Addendum was not intended to reinstate the 2008 Drilling Contract." *Id.* at 26. That "extrinsic evidence" included much that was disputed at trial, including Consol's claim that it made a "mistake," *id.* at 16-17; Ratliff's privileged communications about the Addendum, *id.* at 18; and the view that "'take or pay' provisions could only be economically viable in a market with high natural gas prices that were not present in 2011," *id.* Based on that evidence, the court found that Gasco was "aware[] of the ambiguity," and therefore "a reasonable jury" could not "find for Gasco regarding the issue of mutual assent in this case." *Id.* at 26-27.

## SUMMARY OF ARGUMENT

**I.**    The district court's conclusion that no reasonable jury could find mutual assent between Consol and Gasco was wrong as a matter of black-letter Virginia contract law.  Under Virginia law, courts evaluate whether mutual assent exists between the parties based exclusively on their objective manifestations – the terms of the contract and other contemporaneous communications between the parties.  In the case of a duly executed written contract, as involved here, the question of mutual assent is straightforward.  The parties' unambiguously signed contract, drafted by Consol, agrees to "modify" and "extend" the term of the contract, "intending it to be effective on the effective date," June 13, 2011.  Additionally, Consol specifically identified the 2008 Drilling Contract as the subject of the Addendum, and Consol's signature manifested its assent to Gasco "standing by" and being "ready to perform work."  Under Rule 50(a), that ample evidence must be interpreted in the light most favorable to Gasco and may not be weighed against any countervailing evidence.  The district court's ruling – disregarding a signed contract based on the subjective intent of a sophisticated party that apparently regrets a market-based bargain that turned out to be economically unfavorable – severely undermines Virginia's strong commercial interest in having certainty in contractual relationships.

24

The district court's analysis is riddled with numerous black-letter legal errors. *First*, the court relied extensively on Consol's purported "mistake." But mistake is not a legal basis to find a lack of mutual assent; it is a defense to the enforceability of a contract once one is found to have been formed. And, in any event, a party's unilateral mistake is no defense to a contract. *Second*, the court repeatedly stated that the assent question was one of contract interpretation. That, too, was clearly legal error, because a claim of mutual assent does not invite the court to interpret the parties' agreement. The court's interpretation, moreover, ignored fundamental principles of Virginia contract law. Where Consol drafted, proposed, and signed a contract that it now seeks to interpret out of existence, the court should have rejected Consol's interpretation as absurd and adopted Gasco's as the only reasonable interpretation consistent with the parties' objective manifestations of assent. *Third*, the court invoked secondary sources referring to the doctrine of "misunderstanding," but it misapprehended the basic legal requirements of that doctrine and applied it in a way inconsistent with Virginia law.

Even under the district court's flawed analysis, the court should have submitted the question of mutual assent to the jury. Under Virginia law, disputed testimony and evidence of Consol's intent to renew the contract foreclosed the court from entering judgment as a matter of law. And, under Rule 50, the court

25

impermissibly resolved factual disputes, drew inferences against Gasco, and made credibility determinations that were for the jury alone.

**II.**    The district court also erred in granting partial summary judgment to Consol on the question whether the Addendum renewed the 2008 Drilling Contract as amended or as it originally stood.  Under Virginia law, where, as here, contract renewal is silent on that question, the court must look to parol evidence to discern the parties' intent.  Summary judgment should be reversed because Gasco presented sufficient extrinsic evidence that a reasonable jury could conclude the parties intended to amend the 2008 contract as it originally stood.

**III.**    By contrast, the district court should have granted summary judgment to Gasco on Consol's claims of mutual mistake, fraud, and unilateral mistake. First, where, as here, one party undisputedly intended to enter into the parties' contract as written, there is no mutual mistake as a matter of law.  Second, Gasco did not misrepresent or conceal any information from Consol.  Nor, as a matter of law, can Consol establish reasonable reliance, where Consol failed to read and understand its own contract.  Third, absent fraud, Virginia does not recognize unilateral mistake as a valid contract defense.

**IV.**    Finally, the district court should have granted Gasco's motion *in limine* to exclude two classes of parol evidence.  First, Consol's alleged "mistake" should have been excluded because, in the absence of fraud or mutual mistake, a

party's unilateral mistake is legally irrelevant and inadmissible.  Second, the court

should not have admitted evidence of Gasco's privileged attorney-client

communications.  Whatever those communications might reveal about Gasco's

state-of-mind is irrelevant to the objective mutual assent inquiry and prejudicially

intrudes Gasco's privilege.

## ARGUMENT

## I.  GASCO PRESENTED SUFFICIENT EVIDENCE OF MUTUAL ASSENT

### A.  Standard of Review

This Court reviews "the district court's Rule 50(a) ruling *de novo* to

determine whether the evidence, viewed in the light most favorable to [Gasco],

would have permitted a jury reasonably to return a verdict in [its] favor."  *Sales*

*v. Grant*, 158 F.3d 768, 775 (4th Cir. 1998).  This Court "must reverse" if

"reasonable minds could differ as to the conclusion to be drawn from the

evidence."  *Id.*

### B.  The Evidence Adduced at Trial Was Far More Than Necessary for a Reasonable Jury To Find Mutual Assent

#### 1.  *Mutual Assent Is Determined Objectively Based on the Parties' Outward Manifestations of Intent with Each Other*

Under Virginia law, a court evaluating mutual assent "must look to the

outward expression of a person as manifesting his intention rather than to his secret

and unexpressed intention."  *Lucy v. Zehmer*, 84 S.E.2d 516, 521 (Va. 1954)

(internal quotations omitted). No subjective "meeting of the minds" is necessary. *Id.* at 522. Rather, " '[t]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts.' " *Id.* at 521 (quoting *First Nat'l Exch. Bank v. Roanoke Oil Co.*, 192 S.E. 764, 770 (Va. 1937)); *see Wells v. Weston*, 326 S.E.2d 672, 676 (Va. 1985) ("A meeting of the minds requires a *manifestation* of mutual assent, and a party's mental reservation does not impair the contract he purports to enter.").

The parties' subjective beliefs and intentions are, therefore, legally irrelevant to mutual assent. If a party's "words and acts, judged by a reasonable standard, manifest an intention to agree, it is immaterial what may be the real but unexpressed state of his mind." *Lucy*, 84 S.E.2d at 522; *see Wells*, 326 S.E.2d at 676 ("[W]e must examine his outward expression rather than his secret, unexpressed intention."). Alleged mistakes are irrelevant as well. *See Nationwide Mut. Ins. Co. v. Muncy*, 234 S.E.2d 70, 72-73 (Va. 1977) (reversing trial court's holding that "there was no meeting of the minds" as a result of plaintiff's unilateral mistake); *see also Noland Co. v. Graver Tank & Mfg. Co.*, 301 F.2d 43, 47 (4th Cir. 1962) (applying South Carolina law) (finding mutual assent even though party inadvertently quoted the wrong price; "an offer is judged by its objective manifestations, not by any mental reservations or subjective interpretations or intentions of the offeror").

28

Moreover, because only objective manifestations are relevant, courts evaluating mutual assent "look *exclusively* to the 'expressions of [the parties'] intentions which are *communicated between them*'" at the time of contracting. *The Falls Church v. The Protestant Episcopal Church in the United States*, 740 S.E.2d 530, 541 (Va. 2013) (quoting *Lucy*, 84 S.E.2d at 522) (emphases added; alteration in original), *cert. denied*, 134 S. Ct. 1513 (2014); *see Moorman v. Blackstock, Inc.*, 661 S.E.2d 404, 409-10 (Va. 2008) (rejecting mutuality analysis based on communications "*among the members of one party*," and relying instead on communications "*between the parties*" to evaluate mutual assent); *see also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) ("intentions manifested *in negotiations* rather than any had but not disclosed are controlling") (emphasis added); *Baum v. Whitehorse Marine, Inc.*, 46 Va. Cir. 527, 531 (Norfolk 1996) ("[T]he only relevant intent is that which the parties manifest at the time they signed the contract.").

The Virginia Supreme Court established these principles in *Lucy v. Zehmer*. Lucy sought specific performance of an instrument written and signed by the Zehmers in which they agreed to sell their farm to Lucy for $50,000. 84 S.E.2d at 517-18. Zehmer claimed he did not believe Lucy had $50,000, wrote the contract "as a bluff or dare to force Lucy to admit" he did not have the money, and convinced his wife to sign the contract by whispering to her, "It is nothing but

a joke." *Id.* at 518-20. The Zehmers signed, Lucy took the contract intending to enforce it, and Zehmer remonstrated that he was joking. *Id.* The trial court denied specific performance, but the Virginia Supreme Court reversed.

Zehmer argued that "no binding contract was ever made between the parties" because he was joking and did not intend to sell his farm. *Id.* at 520. The court held that Zehmer's claim to be joking was irrelevant: "mental assent of the parties is not requisite for the formation of a contract," as the law "judges of an agreement between two persons *exclusively* from those expressions of their intentions which are communicated between them." *Id.* at 522 (emphasis added; internal quotations omitted). It was enough that there "appeared to be a good faith offer and a good faith acceptance, followed by the execution and apparent delivery of a written contract." *Id.* The court held the instrument "constituted a binding contract" and ordered specific performance for Lucy. *Id.* at 522-23.

*Lucy* is the well-settled law of Virginia; other cases have followed suit. For example, in *Howard P. Foley Co. v. Phoenix Engineering & Supply Co.*, 819 F.2d 60 (4th Cir. 1987), the district court held that "there was no contract, because the parties' minds had not 'met' on the question of which light fixtures would be provided." *Id.* at 62. This Court reversed, holding that "the parties had a contract" because "[t]here was a clear manifestation of mutual assent when the [defendant's] representative initialed the bid at the November 11, 1984, meeting and [plaintiff]

30

immediately sent a confirmation." *Id.* at 63.  Similarly, in *Wells v. Weston*, the Virginia Supreme Court reversed the trial court's decision "that there was never a meeting of the minds" concerning a provision in a settlement agreement that the defendant allegedly misunderstood and "did not discuss" with the plaintiff.  326 S.E.2d at 674.  The Supreme Court found mutual assent because the defendant "never disclosed" his mistaken interpretation, and "[h]is undisclosed intention" could not "defeat the terms of the bargain he voluntarily entered."  *Id.* at 676-77; *see also Marefield Meadows, Inc. v. Lorenz*, 427 S.E.2d 363, 365-66 (Va. 1993) (rejecting argument of no "meeting of the minds" because defendant allegedly had "no intent to contract," and holding that a valid contract existed because plaintiff "was entitled to believe that [defendant] meant what she said," and defendant's "unexpressed reservations or intentions" cannot "override the written terms" of her offer).

### 2.    *Gasco Presented Ample Evidence of Mutual Assent*

Gasco presented abundant evidence of Consol's objective manifestations of intent to renew the 2008 Drilling Contract.  That evidence was more than sufficient to permit a reasonable jury to find for Gasco.

The best evidence that Consol intended to modify and extend the term of the 2008 Drilling Contract is that Consol drafted and signed a contract that says so.  In the Addendum, the parties "agree[d] to modify" the term of Contract Purchase

Order 5600000439 to be "for one year from the date set forth above" and to be "automatically extended for one year terms." PX11(b). Under Virginia law, "a person having the capacity to understand a written document who . . . signs it, is bound by his signature." *Metro Realty of Tidewater, Inc. v. Woolard*, 286 S.E.2d 197, 200 (Va. 1982) (internal quotations omitted); *Ayers v. Mosby*, 504 S.E.2d 845, 848 (Va. 1998) (same). On its own, Consol's signature on the Addendum created a triable issue of fact.

In addition, Gasco adduced evidence of other written communications confirming Consol's intent to renew the 2008 Drilling Contract. In separate emails, Consol twice confirmed that the 2008 Drilling Contract was the specific contract whose term the Addendum intended "to modify." PX6; PX6(a); PX6(b); PX7; PX7(a); PX7(b). Unless Consol intended to renew the 2008 Drilling Contract in 2011, there was no reason to send it to Gasco.[6]

Moreover, when Gasco returned the executed Addendum to Consol, Gasco said it was "standing by and ready to perform work under this agreement." PX8. By signing the agreement after that representation, Consol manifested its assent to Gasco "standing by" and being "ready to perform work" pursuant to the contract that Consol itself had sent to Gasco. *Compare Phoenix Eng'g*, 819 F.2d at 63

---

[6] Indeed, when Rasnake described the Addendum to Ratliff, she said: "They want to renew a contract." 9/15Tr. 133. Likewise, when Shumaker received Gasco's invoice, he "figured out what happened" simply by reading the Addendum. 9/16Tr. 177.

(finding mutual assent because defendant "initialed the bid" and plaintiff "immediately sent a confirmation"). In the weeks that followed, both parties sent follow-up communications. Consol's emails specifically referred to Gasco's "Drilling – Daywork" contract, showing that Consol understood the Addendum applied to a "drilling" (i.e., competitively bid) contract. PX8; PX9; PX11.

In short, looking "exclusively" at the "communicat[ions] between [the parties]" during their negotiations, *Lucy*, 84 S.E.2d at 522 (internal quotations omitted), there is *no* evidence of confusion, haste, errors, malfunctions, or any mistake at all. The evidence shows clear, deliberate interactions over the course of two months to renew an agreement the parties had previously entered and performed. Just as "a person cannot set up that he was merely jesting when his conduct and words would warrant a reasonable person in believing that he intended a real agreement," *id.*, so too Consol cannot contend that it was mistaken when its conduct and words manifest intent to enter "a real agreement." Rather, because there "appeared to be a good faith offer and a good faith acceptance, followed by the execution and apparent delivery of a written contract," the Addendum constituted a binding agreement. *Id.*

The foregoing evidence defeats Consol's Rule 50(a) motion, for a court "may not . . . weigh the evidence" for and against Gasco. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Because Gasco offered

33

sufficient evidence for a reasonable jury to find mutual assent, Consol's motion should have been denied. *See Nehi Bottling Co. v. All-American Bottling Corp.*, 8 F.3d 157, 162 (4th Cir. 1993) ("A trial court may not enter a j.n.o.v. unless it concludes that there is no evidence on which the jury could have properly based its verdict."); *Brown v. Slenker*, 220 F.3d 411, 425 (5th Cir. 2000) (applying Virginia law) (reversing grant of Rule 50(a) motion at the close of plaintiff's case because "reasonable people could draw different conclusions from that evidence," and the question of the contract's existence therefore "should have been submitted to the jury"); *see also Cranbrook Investors, Ltd. v. Great Atl. Mgmt. Co.*, No. 98-2631, 1999 WL 1020534, at *2-3 (4th Cir. Nov. 10, 1999) (reversing summary judgment based on no "meeting of the minds" where one party claimed it "did not intend to be bound by the letter agreement," and holding instead that the jury must decide the meaning of disputed terms not discussed during negotiations) (judgment noted at 201 F.3d 435 (table)); *Jessee v. Smith*, 278 S.E.2d 793, 794-95 (Va. 1981) (reversing trial court's pre-verdict ruling "that there had been no meeting of the minds," and holding that, "[i]f the jurors believed [plaintiff]'s testimony, they could have concluded that an agreement had been reached").

### 3. The District Court's Decision Undermines Contract Certainty

Every industry depends on the settled expectations derived from enforcement of signed contracts. *See Adams v. Doughtie*, 63 Va. Cir. 505, 536

(Fairfax Cnty. 2003) ("[T]he foundation of our system of contracts must suffer a presumption in favor of the validity of such signed and notarized documents."); *General Ins. of Roanoke, Inc. v. Page*, 464 S.E.2d 343, 344-45 (Va. 1995) (applying the presumption to insurance policies). Virginia abides by certain fundamental principles of contract law to protect "the certainty and safety of written contracts," *Shenandoah Valley R.R. Co. v. Dunlop*, 10 S.E. 239, 240 (Va. 1889): signed agreements are enforceable, *Woolard*, 286 S.E.2d at 200; "[a] unilateral mistake will not invalidate a contract," *Langman v. Alumni Ass'n of Univ. of Virginia*, 442 S.E.2d 669, 677 (Va. 1994); and a party cannot evade its contract because it regrets making a bad bargain, *see Jessee*, 278 S.E.2d at 795 ("That one party rues the bargain he struck does not excuse his performance."); *see also Meade v. Wallen*, 311 S.E.2d 103, 104 (Va. 1984) ("there is nothing in law or in logic to prevent parties from adopting" an "unusual" price term).[7]

By allowing Consol to void a signed contract because Gasco supposedly should have known Consol would not want to enter it, the district court undermined all of those principles. As a result of the decision below, commercial entities across the Commonwealth will be less confident of their signed contracts –

---

[7] The district court therefore erred in relying on its view of the economic rationality of the parties' agreement as a basis for finding lack of mutuality. DE283, at 26.

35

especially market-based contracts that, in hindsight, turn out to be economically one-sided.

### C.    The District Court Committed Legal Error in Granting Consol's Rule 50(a) Motion

The district court's opinion is riddled with errors of black-letter law.  It improperly confused mutual-assent analysis with questions of mistake and contract interpretation.  It also erred in *sua sponte* importing into Virginia law a doctrine of "misunderstanding" that the court misapprehended and no party advocated.  Moreover, even under the court's flawed analysis, Virginia law and Rule 50 precluded the court from taking the case from the jury.

### 1.    Contrary to Virginia Law, the District Court Relied on Consol's Purported Mistake

The district court held that Gasco's contract claim failed for lack of mutual assent.  DE283, at 27.  But Consol's argument, and the district court's analysis, was that Consol's "mistake" precluded mutual assent.  9/17Tr. 62, 64, 68, 81; DE283, at 2, 10, 16-18, 24 (referring to Consol's "error," "inadverten[ce]," "inten[t]," and "mistake").

Relying on Consol's purported mistake in evaluating mutual assent was erroneous as a matter of law for three reasons.  First, a party's subjective beliefs or mistakes are irrelevant to mutual assent.  *See supra* Part I.B.1.  Virginia courts have consistently rejected efforts to defeat mutual assent based on one party's

mistake or supposed intent not to enter an agreement it signed. *See*, *e.g.*, *Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928, 931 (Va. 1991) (rejecting argument that there was no "contract because there was no meeting of the minds," notwithstanding undisputed typo in offer); *Wilson v. Wilson*, No. 1958-03-2, 2004 Va. App. LEXIS 17, at *5-8 (Va. Ct. App. Jan. 13, 2004) (finding mutuality in contract signed by both parties, notwithstanding one party's claim that he did not intend to sign it as a final agreement); *Cole v. Cole*, 18 Va. Cir. 362, 363-64 (Richmond 1989) (same).

Second, "mistake" not only is irrelevant to mutual assent, but is an altogether separate doctrine unrelated to contract formation. As a *defense* to the enforceability of a valid contract, a party may show that both parties made a factual mistake that undermines their bargain. *Muncy*, 234 S.E.2d at 72; *see infra* Part III. Even as a defense, however, a "*unilateral* mistake" like Consol's "will not invalidate a contract." *Langman*, 442 S.E.2d at 677 (emphasis added); *see Woolard*, 286 S.E.2d at 200 (holding that, regardless of what defendant "intended," he was "nonetheless bound by his signature . . . and could not have avoided the contract because of his unilateral mistake"); *infra* Part III.D.

Third, "[p]arol evidence is never competent to show merely what one of the parties to a contract thought." *Fox-Sadler Co. v. Earl E. Norris Roofing Co.*, 327 S.E.2d 95, 97 (Va. 1985) (internal quotations omitted). Here, only Consol claimed to be mistaken. Had Shumaker's testimony about the purported mistake been

37

properly excluded, *see infra* Part IV.B, there would have been no evidence on which the court could rely.

The district court therefore erred in relying on Consol's purported mistake, which was irrelevant to mutuality under Virginia law.

> 2. *Contrary to Virginia Law, the District Court Erroneously Attempted To Interpret the Addendum*

The district court viewed "the issue . . . before th[e] court" as "a matter of contract interpretation." DE283, at 20. The court erred both in its view of "the issue . . . before th[e] court" and in its effort to interpret the Addendum.

> a.  There was no need for the court to interpret the Addendum

Engaging in contract interpretation as part of mutuality analysis was legal error. As the district court recognized elsewhere in its opinion (DE283, at 15), mutual assent focuses on whether the parties have manifested their intent to contract terms that are "reasonably certain." *Allen*, 281 S.E.2d at 820 ("there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances"). Consol has never contended that the terms of the Addendum "were too vague and indefinite to enforce." *Id.* at 819. There was, therefore, no reason for the district court to interpret the specific terms of the Addendum; the relevant question was simply whether the parties objectively manifested intent to agree to those terms.

b.    In any event, the only reasonable interpretation of the
Addendum is that it renewed the 2008 Drilling Contract
in 2011

To the extent this Court nevertheless views the interpretation of the

Addendum as relevant, the district court's interpretation was erroneous as a matter

of Virginia law.  Gasco presented more than enough evidence for a reasonable jury

to adopt Gasco's interpretation of the Addendum.

As the district court recognized, Gasco proposed a reasonable interpretation

of the Addendum.  DE283, at 24-25.  In the Addendum, Gasco and Consol

"execute[d] this agreement intending it to be effective on the effective date,"

June 13, 2011.  PX11(b).  They agreed to "modify" the term of the 2008 Drilling

Contract such that "the term of this agreement shall be for one year from the date

set forth above."  *Id.*  Under Virginia law, "[w]ords that the parties used are

normally given their usual, ordinary, and popular meaning."  *City of Chesapeake v.*

*States Self-Insurers Risk Retention Group, Inc.*, 628 S.E.2d 539, 541 (Va. 2006)

(internal quotations omitted).  The most natural reading of "the date set forth above"

is that it refers to the date above the words on the page of "this agreement" –

June 13, 2011.  PX11(b).

A contract "must be construed to give effect to the intention of the parties,"

and a court should not "subvert the obvious intention of the parties."  *Transit Cas.*

*Co. v. Hartman's, Inc.*, 239 S.E.2d 894, 896-97 (Va. 1978).  Gasco's reading of the

39

Addendum is consistent with the parties' manifested intent to enter a binding agreement, effective in 2011, to renew the 2008 Drilling Contract. *See supra* Part I.B.2. It is also consistent with the fact that Consol signed the Addendum after learning that Gasco was "ready to perform work" in 2011 under the renewed 2008 Drilling Contract. PX8; PX11(b).

Consol's position is that the Addendum should be interpreted to "provide[ ] for a one-year renewable term as of July 7, 2008," retroactively creating a contract that "could never have existed and is a nullity." DE283, at 8. However, whether the Addendum renewed the 2008 Drilling Contract as early as July 7, 2008, is immaterial because Gasco only seeks contract damages after June 13, 2011. Consol's contrary interpretation is absurd and ignores Virginia law requiring an ambiguous term to be construed against the drafter.

    **i.**    The Virginia Supreme Court's decision in *Government Employees Insurance Co. v. Moore*, 580 S.E.2d 823 (Va. 2003), is on point. In that case, Moore sought to recover insurance proceeds from GEICO under his umbrella insurance policy. *Id.* at 825. The policy excluded personal injury to any "insured," defined as "You and your spouse . . . ; *both* with respect to a non-owned auto furnished for regular use by you or your spouse, only if the auto is insured in a primary auto policy." *Id.* "GEICO readily concede[d] the term 'both' erroneously replaced the word 'but'" in the definition. *Id.* at 828. But Moore argued that the

40

resulting literal meaning of "insured" was ambiguous, thereby triggering Virginia's

default rule that an ambiguous policy must be interpreted in favor of coverage. *Id.*

The Virginia Supreme Court held that any ambiguity was immaterial:

> Any ambiguity in the "both clause" affects the use of a non-owned
> automobile which is simply immaterial to the facts of the case at bar.
> Had the Moores been driving a non-owned automobile, the "both
> clause" might have been material, but that argument is moot since the
> Moores unquestionably owned the vehicle involved in the accident.

*Id.* at 829. Moreover, the court held that, under Moore's literal interpretation, the

insured would be covered only in someone else's car, which would be "directly

contrary to the remainder of the umbrella policy and the intent of the parties." *Id.*

Because Moore's argument "produce[d] an absurd result," the court "reject[ed] it."

*Id.*

Likewise here, any ambiguity in whether the Addendum renewed the 2008

Drilling Contract before 2011 is immaterial because Gasco does not seek damages

before 2011. There is, therefore, no need to resolve the question whether the

Addendum was effective before 2011.[8]

Moreover, like the insured's argument in *Moore*, Consol's argument that a

literal reading of the Addendum nullifies any resulting contract is absurd. Where

---

[8] The Addendum modified the term so that the drilling contract would renew
automatically every year absent notice of termination. Thus, even if the Addendum
were effective before 2011, by its own terms – namely, the automatic-renewal
provision and the parties' "inten[t] to be legally bound" in 2011, PX11(b) – the
Addendum would not result in a nullity, but rather a renewed drilling contract
enforceable in 2011.

the parties manifested mutual assent and signed a contract to renew an agreement
they previously entered, it would be absurd to reject Gasco's reasonable
interpretation for an interpretation that nullifies the entire agreement. *See Doswell
Ltd. P'Ship v. Virginia Elec. & Power Co.*, 468 S.E.2d 84, 88 (Va. 1996) ("Even
though an agreement may have been drawn unartfully, the court must construe the
language as written if its parts can be read together without conflict.").  Even
Shumaker admitted he did not "intend to enter into a contract that was arguably
dead on arrival."  9/16Tr. 148.  Under black-letter Virginia law, Consol's absurd
interpretation of its own contract must be rejected for Gasco's more reasonable
interpretation. *See Moore*, 580 S.E.2d at 829; *Dart Drug Corp. v. Nicholakos*, 277
S.E.2d 155, 158 (Va. 1981) (rejecting contract interpretation that "would write out"
other provisions of the agreement); *Providence Square Assocs., LLC v. G.D.F.,
Inc.*, 211 F.3d 846, 852-53 (4th Cir. 2000) (rejecting defendant's literal interpretation
because it "permits the label to control substance," which would "surely lead to
such absurd results").

    **ii.**    In any event, to the extent there is any "ambiguity in the written
contract, such ambiguity *must* be construed against the drafter of the agreement."
*Martin & Martin, Inc. v. Bradley Enters., Inc.*, 504 S.E.2d 849, 851 (Va. 1998)
(emphasis added); *see Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (Va. 1984).
As the Eighth Circuit opined in a case presenting similar arguments regarding
conflicting interpretation, where, as here, " 'it is clear that the parties tried to make

a valid contract, and the remaining doubt as to the proper interpretation is merely as to which of two possible and reasonable meanings should be adopted, the court will adopt that one which is less favorable in its legal effect to the party who chose the words.'" *Iowa-Des Moines Nat'l Bank v. Insurance Co. of N. Am.*, 459 F.2d 650, 656 n.8 (8th Cir. 1972) (quoting 3 *Corbin on Contracts* § 559, at 262 (1960)). Here, Consol undisputedly drafted the Addendum. 9/16Tr. 144. It follows that any ambiguity regarding "the date set forth above" must be construed against Consol.

Because Consol drafted, proposed, and signed a contract that it now seeks to interpret out of existence, any interpretation of the contract should have rejected Consol's construction for Gasco's reasonable interpretation that is consistent with the parties' objective manifestations of mutual assent.

> ### 3. The District Court Misapprehended and Misapplied the Doctrine of "Misunderstanding"

After examining the Addendum and extrinsic evidence, the district court turned to secondary sources for a doctrine "address[ing] a situation in which the parties' manifestations have more than one reasonable meaning." DE283, at 25. The court held that, "'if the offeree's knowledge of the surrounding circumstances is such that the offeree should also have observed the ambiguity, then . . . if the parties' meanings do not coincide, no contract will exist.'" *Id.* (quoting 2 *Williston on Contracts* § 6:59). That is known as the doctrine of "misunderstanding." *See* 2 *Williston on Contracts* §§ 6:58-6:59. Consol never pleaded or argued that doctrine

– including in its Rule 50 motion – and the district court did not cite any Virginia case that has adopted it.  In fact, "misunderstanding" is inconsistent with numerous Virginia cases.  *See*, *e.g.*, *Wells*, 326 S.E.2d at 676-77 (holding undisclosed misinterpretation irrelevant to mutuality); *Muncy*, 234 S.E.2d at 72-73 (reversing trial court's holding that different interpretations meant "no meeting of the minds").

On its own terms, the district court misapprehended the doctrine of misunderstanding.  A misunderstanding occurs when both parties had different understandings of the same "phrase in a contract [that] . . . is reasonably capable of different interpretations," and one or both parties had reason to know of the other's interpretation.  2 *Williston on Contracts* § 6:59.  Here, however, there is no evidence that Consol, at the time it signed, understood the Addendum as renewing the 2008 Drilling Contract effective July 7, 2008; rather, Consol claims it did not intend to renew the prior contract at all.  In other words, Consol claims the parties had different intentions regarding the contract, *not* that they had different understandings of a specific phrase in the contract.  The doctrine of misunderstanding therefore does not apply here.

Moreover, where a party is "responsible for causing the ambiguity" about which it claims a misunderstanding, that party is "bound by the interpretation placed on ambiguous language."  *Id.*  Because Consol is responsible for any ambiguity in the Addendum, the district court should not have invoked

44

misunderstanding to vitiate Consol's agreement.  *See also* Restatement (First) of Contracts § 70 (1932) ("One who makes a written offer which is accepted . . . is bound by the contract, though ignorant of the terms of the writing or of its proper interpretation.").

The district court also applied the doctrine of misunderstanding inconsistently with Virginia law.  The existence of mutual assent turns exclusively on the parties' communications with each other.  *See supra* Part I.B.1.  In evaluating Gasco's "knowledge of the surrounding circumstances," however, the court improperly relied on "the depressed economic environment," the parties' contract history, and the economic viability of take-or-pay provisions in 2011.  DE283, at 26.  When properly confined to the parties' contemporaneous communications, there is no evidence of any misunderstanding.  *See supra* Part I.B.2.

### 4. *Virginia Law Precluded the District Court from Resolving Mutuality*

Even under the district court's flawed analysis, mutual assent was a question for the jury.  As (erroneously) framed by the court, the dispositive question was whether a "reasonable person in Ratliff's position" would know "that Knox/Consol did not intend to reinstate the 2008 Drilling Contract."  DE283, at 26.  Under Virginia contract law, the court was precluded from resolving that question.

First, "'whenever it is necessary to refer to testimony of witnesses in order to ascertain the contract, or to ascertain facts in the light of which the contract is to

be construed, then the court is bound to refer such controverted matters of testimony to the decision of the jury.'" *Nehi Bottling*, 8 F.3d at 162 (quoting *Combs v. Dickenson-Wise Med. Group*, 355 S.E.2d 553, 557 (Va. 1987)); *see Turner & Happersett v. Hall & Connor*, 104 S.E. 861, 864 (Va. 1920). Here, both parties submitted testimony regarding their understanding of the contract and the reasons for their actions. Indeed, Consol's "mistake" defense rested *entirely* on testimony that the Addendum was a mistake. Because such testimony was received in evidence, Virginia law required the case to be submitted to the jury.

Second, "[t]he interpretation of [an] ambiguous term must be left to the jury 'if . . . fairminded men might reasonably arrive at different conclusions.'" *Musgrave v. HCA Mideast, Ltd.*, 856 F.2d 690, 694 (4th Cir. 1988) (quoting *Combs*, 355 S.E.2d at 557); *Brown*, 220 F.3d at 425; *Nehi Bottling*, 8 F.3d at 162; *Geoghegan Sons & Co. v. Arbuckle Bros.*, 123 S.E. 387, 389 (Va. 1924). Under the district court's flawed analysis, Gasco presented sufficient evidence for reasonable jurors to conclude that Consol intended to renew the 2008 Drilling Contract. *See supra* Parts I.B.2, I.C.2.b. The question of the parties' meaning and intent, therefore, was not a question the district court could resolve.

### 5.    *The District Court Misapplied Rule 50*

The district court also violated bedrock rules that strictly limit a court's evaluation of a Rule 50(a) motion. Under Rule 50, "the court must draw all

reasonable inferences in favor of [Gasco], and it may not make credibility

determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. The court must

"give credence to the evidence favoring [Gasco]" and "must disregard all evidence

favorable to [Consol] that the jury is not required to believe." *Id.* at 151. The

JMOL ruling ran afoul of those rules.

      The district court resolved factual disputes. For example, based only on

Shumaker's uncorroborated testimony, the court found it was "clear" that Consol

made a "mistake" in sending and signing the Addendum. DE283, at 16-17.

However, Consol's alleged mistake is inconsistent with all of Gasco's evidence of

Consol's assent, as well as Consol's contemporaneous SEC filings discussing the

company's practice of entering take-or-pay contracts. *See supra* Part I.B.2; PX15,

at 47; PX16, at 43.[9] Similarly, the court found that take-or-pay provisions "could

only be economically viable in a market with high natural gas prices that were not

present in 2011," DE283, at 26, ignoring Consol's 2011 SEC filing and evidence

that such contracts can be economically viable in a down market when a party has

"hedged," 9/16Tr. 34-35, 40, 111.

---

     [9] After initially admitting the SEC filings into evidence, *see* 9/16Tr. 122, the district court erroneously held on relevance grounds that only the portions read into the record would be admitted into evidence, *see* 9/17Tr. 2-3. That was error because unread portions of the reports concerned take-or-pay contracts and were plainly relevant. *See, e.g.*, PX16, at 43. In any event, this Court may take "judicial notice of the content of relevant SEC filings." *Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 881 (4th Cir.), *cert. denied*, 135 S. Ct. 113 (2014).

The district court also improperly drew inferences against Gasco. For example, the court read the Terms & Conditions Mailer "in conjunction with [Consol's] June 6, 2011, email and Addendum," when it was unnecessary to do so. DE283, at 22-23. The documents were sent separately by different means, do not reference each other, and do not undermine Gasco's understanding of the Addendum. *See supra* pp. 20-21. The court also interpreted the ambiguous phrase "current contract" in Consol's June 6 email, PX3, to mean a contract "in effect" as opposed to one "in existence," DE283, at 21-22, ignoring Ratliff's testimony that Gasco's contracts with Consol were "always open," 9/16Tr. 42, and Consol's repeated representations that the "current contract" *was* the 2008 Drilling Contract, PX6; PX6(b); PX7; PX7(b). The court then improperly drew the adverse inference that Consol's reference to "current" revealed an intention that the Addendum not apply to the 2008 Drilling Contract. DE283, at 21-22.

The district court also improperly questioned Ratliff's credibility. The court relied on Ratliff's consultation with counsel to discredit Ratliff's claim that he "believed the Addendum represented a legitimate request by Knox/Consol to reinstate the 2008 Drilling Contract." *Id.* at 18.

## II.    THE DISTRICT COURT ERRED IN GRANTING CONSOL PARTIAL SUMMARY JUDGMENT

The district court held on summary judgment that, assuming the Addendum renewed the 2008 Drilling Contract, it renewed the contract as previously amended in May 2010, such that Gasco could claim "standby" time for only one drilling rig. DE236, at 2; DE156-22.  This Court reviews that ruling *de novo* to determine "whether there exist any genuine issues of material fact."  *Atalla v. Abdul-Baki*, 976 F.2d 189, 192 (4th Cir. 1992).

Under Virginia law, where a contract renewal is silent regarding whether the parties intended to renew the agreement as it originally stood or as previously amended, the contract is ambiguous and the court should look to parol evidence to discern the parties' intent.  *Midlothian Coal Mining Co. v. Finney*, 59 Va. 304 (1868), is on point.  In that case, the parties had an April lease that they amended and then later renewed.  The renewal agreement, however, did not reference the amendment.  The "question" before the court was "whether the parties intended, by the [renewal contract], to renew" the April lease "as it originally stood" or as amended.  *Id.* at 309.  The Virginia Supreme Court held that, because the renewal agreement was silent on the matter, it was ambiguous, and the parties could "show by parol evidence[] what was the actual intention of the parties."  *Id.*  Because the trial court had "decided the case upon the construction of the several leases, and without reference to the parol evidence," the court reversed and remanded.  *Id.*;

49

*see Musgrave*, 856 F.2d at 694-95 (reversing JMOL and holding that contract's "silen[ce]" made it "impossible to discern from the terms of the contract alone" what the parties intended, and remanding for jury consideration of parol evidence).

Here, the Addendum is silent on the question whether the parties intended to renew the 2008 Drilling Contract as previously amended or as it originally stood. Under *Finney*, parol evidence must be considered to discern the parties' intent. Moreover, as Consol's document, the Addendum must be interpreted in Gasco's favor. *See SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co.*, 508 F. App'x 243, 250 (4th Cir. 2013); *Martin*, 504 S.E.2d at 851.[10]

Abundant evidence before the district court on summary judgment supported Gasco's interpretation. *First*, the text of the Addendum could have made clear that the parties were modifying the 2008 Drilling Contract "as amended." *See* DE156-45, at 2. That it does not do so, construed against Consol, supports Gasco's interpretation.

*Second*, when Consol twice identified the contract it wanted to renew, it did not include any amendments, but rather sent the original contract, which provides for two rigs. *See* DE156-38; DE156-39. Moreover, the May 2010 amendment

---

[10] The district court held that, "[i]f Gasco wishes the contract to be reinstated, it must take the bad with the good, that is, the entire contract and not just the portion of it that is favorable to Gasco." DE236, at 2. No case supports that proposition, and the court did not cite one. Contrary to *Finney*, the court essentially devised a new legal rule that a contract necessarily renews all prior amendments unless the parties say otherwise.

50

modified the remaining term for each of the rigs under the 2008 Drilling Contract. *See* DE156-22. A jury could reasonably infer that, when the parties further amended the term in 2011, they replaced all prior term amendments.

*Third*, Consol's pre-litigation conduct supports Gasco's interpretation. *See Roanoke Oil*, 192 S.E. at 770. When Consol first disputed Gasco's invoice, it did not assert that only one drilling rig was subject to renewal. *See* DE156-55. Even at the beginning of the litigation, Consol did not believe any amendments to the contract were relevant. *See* DE116, at 6 ("[A]fter the Addendum's execution, *only* the 'Contract Purchase Order' . . . functionally governs the parties' relationship.") (emphasis added). Consol therefore understood the Addendum as modifying the 2008 Drilling Contract as it originally stood and only came up with its current argument during the litigation.

Contrary to Virginia law requiring the agreement to be construed against Consol, and contrary to federal law requiring all reasonable inferences to be drawn in Gasco's favor on summary judgment, the district court interpreted the Addendum's silence *against Gasco*, holding that "there is no proof that Knox/Consol indicated . . . that it intended to forego [*sic*] any provision of the total contractual relationship." DE236, at 3. Because a reasonable jury could have found that the parties intended to renew the contract "as it originally stood," *Finney*, 59 Va. at 309, the district court erred in entering summary judgment for Consol. *See Musgrave*, 856 F.2d

51

at 695 (reversing JMOL and ordering new trial where contract was silent and "fairminded men might reasonably arrive at different conclusions" regarding the parties' intent) (internal quotations omitted); *see also Cranbrook Investors*, 1999 WL 1020534, at \*2-5 (reversing summary judgment and ordering trial regarding the meaning of the parties' silence in their agreement).

## III. THE DISTRICT COURT ERRED IN DENYING SUMMARY JUDGMENT TO GASCO

### A. Standard of Review

The district court erroneously denied Gasco's motion for summary judgment on Knox's claims of mutual mistake, fraud, and unilateral mistake. 8/20Tr. 77. Even drawing all reasonable inferences in Knox's favor, the undisputed facts establish there was no mistake or fraud as a matter of Virginia law. This Court reviews the denial of Gasco's motion *de novo*. *See Brown v. McLean*, 159 F.3d 898, 902-04 (4th Cir. 1998).

### B. As a Matter of Law, There Was No Mutual Mistake

Under Virginia law, to establish mutual mistake, Consol must prove by clear and convincing evidence that both parties made the same factual mistake about the agreement. *See Virginia Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 265-66 (4th Cir. 1971); *Langman*, 442 S.E.2d at 677 ("The mistake must be common to both parties."); *Fox-Sadler*, 327 S.E.2d at 97. Thus, where one party intended the

contract as written, mutual mistake fails as a matter of law. *See Muncy*, 234 S.E.2d at 73; *Fox-Sadler*, 327 S.E.2d at 97.

For example, in *Ward v. Ward*, 387 S.E.2d 460 (Va. 1990), a divorce settlement drafted by the husband's lawyer provided the parties would sell their townhome and share the proceeds equally, and that the husband, Richard, "would purchase the marital residence and pay Linda 100% of the parties' net equity in that property." *Id.* at 460. Richard asserted mistake, arguing that the parties intended that Linda "receive 100% of the proceeds of the sale of the townhouse . . . as a credit toward one-half of the net equity of the marital residence." *Id.* at 461 (alteration in original). Although that had been the initial agreement, Linda testified she changed her mind because Richard's lawyer took so long preparing the draft. *Id.* at 462. When the draft finally arrived, she read the revised terms and decided to sign, recognizing "it provided she would receive 100% of the net equity in the marital residence." *Id.* The Supreme Court held that, because "the mistake involved here was unilateral," not mutual, the contract was enforceable. *Id.*; *see also Langman*, 442 S.E.2d at 677; *Muncy*, 234 S.E.2d at 73; *SCM*, 448 F.2d at 265.

Likewise here, there is *no evidence* that Gasco made any mistake, much less the same mistake that Consol made. Gasco understood that the Addendum renewed the 2008 Drilling Contract, DE159-20; Consol claims it mistakenly did not; thus, only Consol made a mistake. *See Fox-Sadler*, 327 S.E.2d at 97 (rejecting

mutual mistake as a matter of law because "any mistake . . . was unilateral"). Consol argued below that the parties were mutually mistaken that the 2008 Drilling Contract was a "current contract purchase order" to which Consol's "evergreen" program applied.  DE156, at 39.  It is undisputed, however, that Gasco knew nothing about Consol's alleged "evergreen" program, and therefore could not be mistaken about it.[11]  In all events, Consol's argument is legally irrelevant because Gasco undisputedly intended to renew the 2008 contract.  Because only Consol purportedly made a mistake, Gasco is entitled to summary judgment.

### C.    As a Matter of Law, Gasco Did Not Commit Fraud

Consol "bears the burden of proving by clear and convincing evidence" every element of fraud, *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 346-47 (Va. 1998), including that it had "the right to reasonably rely" on Gasco's allegedly fraudulent statements or omissions, *Metrocall of Delaware, Inc. v. Continental Cellular Corp.*, 437 S.E.2d 189, 193-94 (Va. 1993).

Consol alleged that Gasco committed fraud by filling in the blanks on the Addendum and by concealing from Consol its own alleged mistake in the contract it drafted.  DE173, at 31-32.  However, as a matter of undisputed fact, there is nothing false or misleading in the factual information Gasco put in the blanks of

---

[11] It is undisputed that Consol identified the 2008 Drilling Contract as the contract to which the Addendum applied, and that Consol's own documents identify the 2008 Drilling Contract as a "Contract Purchase Order."  DE184-1.

the Addendum. And, as a matter of law, Gasco could not conceal from Consol what Consol could see for itself. *See Costello v. Larsen*, 29 S.E.2d 856, 857 (Va. 1944) (affirming dismissal of fraud claim where "plaintiff was dealing with defendants at arm's length" and "it was the duty of plaintiff to make inquiry in regard to the true status of affairs"; "[f]ailure to so do was negligence"). Just as a party signing a general release from liability has "no obligation . . . to reveal all the possible legal theories that the other may possibly use against him," a party signing a contract drafted by another has no obligation to reveal all the legal consequences of the contract language. *SCM*, 448 F.2d at 265-66 (rejecting fraud based on the "failure to appreciate the significance of the known facts").

In all events, even assuming the (counterfactual) misrepresentations and concealments that Consol has alleged, its purported reliance was unreasonable as a matter of law. *Muncy* is on point. In that case, plaintiff Muncy signed a settlement and release with Wall. 234 S.E.2d at 70-71. Muncy read and rejected Wall's first proposed agreement because it included a general release and Muncy feared she could have future medical expenses. *Id.* at 71. Wall then proposed an agreement that provided up to $2,000 for medical expenses, but still included a general release. Muncy signed the second agreement without reading it. *Id.* at 71-72. When she later realized it contained a general release, she sued to void the agreement on grounds of mistake and fraud. *Id.* at 70-71. The trial court voided

the release because "there was no meeting of the minds" since the parties intended different releases. *Id.* at 73. Rejecting both mistake and fraud, the Supreme Court reversed.[12] As to fraud, Muncy's reliance was unreasonable as a matter of law. She had "initiated and aggressively pursued the settlement negotiations with Wall" and "had the ability and the opportunity to read the release, and it was her duty to do so before signing it." *Id.* at 74. That she failed to do so was her own fault, and she could not "call such heedlessness another person's fraud." *Id.* (internal quotations omitted).

Here, as the party that drafted and proposed the Addendum, Consol was in a better position than Gasco to understand the contract. Consol therefore cannot claim fraud based on its own "heedlessness" in proposing and signing the Addendum. *Id.*; *Corbett v. Bonney*, 121 S.E.2d 476, 481 (Va. 1961); *see SCM*, 448 F.2d at 265-66. Gasco is entitled to summary judgment on fraud.

### D. Virginia Does Not Recognize Consol's Unilateral Mistake as a Defense

Virginia law is clear that "[a] unilateral mistake will not invalidate a contract." *Langman*, 442 S.E.2d at 677; *see Woolard*, 286 S.E.2d at 200 (holding that, regardless of what defendant "intended," he was "nonetheless bound by his signature . . . and could not have avoided the contract because of his unilateral

---

[12] As to mistake, the court held that Wall's intent to secure a general release precluded any claim of mutual mistake. 234 S.E.2d at 73.

mistake"); *Marshall v. Cundiff*, 180 S.E.2d 229, 231-32 (Va. 1971) (reversing JMOL based on plaintiff's claim that he did not intend to release defendant from liability, and reinstating jury verdict finding a "valid contract"); *see also Ashby v. Dumouchelle*, 40 S.E.2d 493, 497 (Va. 1946) (a party cannot rely on "inexcusable negligence to defeat the terms of [a] written agreement").

Only when combined with another party's fraud can a unilateral mistake invalidate a contract. *See*, *e.g.*, *Ward*, 387 S.E.2d at 462 (holding that contract may be reformed based on mistake "in only two instances":  (1) mutual mistake, and (2) unilateral mistake "accompanied by misrepresentation and fraud perpetrated by the other") (internal quotations omitted).  Indeed, the Virginia Supreme Court has expressly held it will not make the "substantial change in Virginia law" of allowing reformation based on one party's unilateral mistake and the other party's supposed "knowledge" of the mistake. *Id.* at 463; *see Muncy*, 234 S.E.2d at 72-73.[13]  Here, because there was no fraud, *see supra* Part III.C, Gasco is entitled to summary judgment on Consol's unilateral mistake claim.

---

[13] Consol argued below that its unilateral mistake combined with "inequitable conduct" by Gasco can void the contract.  But the Virginia Supreme Court has held that so-called "inequitable conduct" "is indistinguishable from fraud." *Langman*, 442 S.E.2d at 677.

## IV.  THE DISTRICT COURT ERRED IN DENYING GASCO'S MOTION *IN LIMINE* TO EXCLUDE INADMISSIBLE PAROL EVIDENCE

### A.    Standard of Review

This Court reviews *in limine* rulings for abuse of discretion.  *Projects Mgmt. Co. v. DynCorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013).  An "erroneous view of the law" constitutes an "abuse of discretion."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

### B.    Evidence of Consol's Alleged "Mistake" Was Inadmissible

The district court erroneously denied Gasco's motion *in limine* to exclude (among other things) evidence of Consol's purported "mistake."  *See supra* p. 18.

As this Court has recognized, "[t]he parol evidence rule . . . has nowhere been more strictly adhered to in its integrity than in Virginia."  *SunTrust Mortg.*, 508 F. App'x at 248 (internal quotations omitted).  Under Virginia law, where only one party claims to have been mistaken, "[p]arol evidence is never competent to show merely what one of the parties to a contract thought."  *Fox-Sadler*, 327 S.E.2d at 97 (internal quotations omitted).  Because Consol does not have viable defenses of mistake or fraud, *supra* Part III, and because its purported "mistake" is irrelevant to mutual assent, *supra* Part I.B, the district court should have excluded argument and evidence of Consol's purported "mistake" as irrelevant, confusing, and misleading.  *See* Fed. R. Evid. 401, 403.

### C.    Evidence of Gasco's Privileged Communications Was Inadmissible

The district court held that references to Gasco's attorney-client communications regarding the Addendum are "highly relevant to ascertaining Gasco's state of mind, particularly with regard to the issue of mutual assent and other factually related issues," and it rejected Gasco's argument that any relevance was outweighed by prejudice.  DE258, at 7.  That was legal error.

First, it was error to admit the evidence of attorney-client communications on the ground that they are relevant to mutual assent, which is judged exclusively by communications exchanged during negotiations.  *See supra* Part I.B.1.

Second, evidence of Gasco's privileged communications regarding the Addendum was highly prejudicial and inadmissible under *Parker v. Prudential Insurance Co. of America*, 900 F.2d 772 (4th Cir. 1990).  In *Parker*, an insurer asserted an accord-and-satisfaction defense to a beneficiary's insurance claim.  The district court permitted the insurer to cross-examine the beneficiary's former attorney about his conduct on the beneficiary's behalf, without revealing the substance of their communications.  The court found an "accord and satisfaction as a matter of law and granted a directed verdict" for the insurer.  *Id.* at 774.  On appeal, this Court held it was error to admit testimony about the attorney-client interactions.  *Id.* at 775-76.  The attorney's testimony related to his client's "state of mind," which the Court held was "only probative" if one draws inferences about

59

the substance of the communications.  *Id.* at 775.  Yet "[a]ny such inference would intrude upon the protected realm of the attorney-client privilege."  *Id.*  Moreover, the trial court itself "impermissibly used" the testimony by "rel[ying] upon that testimony in his ruling" to "draw an inference about the substance of [the plaintiff's] conversations" with her attorney.  *Id.*

That is precisely what happened here.  As the district court candidly admitted before trial, it believed that a "probabl[e]" and "logical" inference to be drawn from the fact that Gasco consulted its attorney about the Addendum is that the two hatched a plan to "get a big windfall."  8/20Tr. 69.  Under *Parker*, the evidence should have been excluded for that reason alone.  900 F.2d at 775.  Moreover, armed with "suspicion[s]" about the "real facts," 8/20Tr. 69, the district court improperly relied on Gasco's attorney-client communications in its Rule 50 ruling to draw adverse inferences against Gasco and undermine Ratliff's credibility.  *See* DE283, at 10 & n.5, 18.[14]  If the court felt at liberty to draw such improper inferences, the jury would have done the same, which is precisely what *Parker* prohibits.

---

[14] Consol also misused the evidence throughout trial.  9/15Tr. 87-89; 9/16Tr. 73-74, 81, 84; 9/17Tr. 65, 67.

## CONCLUSION

This Court should reverse the final and summary judgments of the district court.   The Court should further order a new trial, the exclusion of inadmissible parol evidence, and entry of summary judgment for Gasco on Consol's claims of mutual mistake, fraud, and unilateral mistake.

## REQUEST FOR ORAL ARGUMENT

Gasco respectfully requests oral argument, which would be helpful to the Court because this appeal presents important questions of Virginia contract law, including whether – as the district court held – a commercial party may avoid liability under an economically unfavorable contract on the ground that the party never meant to enter the contract in the first place, even though it drafted, proposed, and signed it.  Gasco would welcome an opportunity to address any questions the Court may have.

Dated:  April 6, 2015                                   Respectfully submitted,

                                                         /s/ *Daniel G. Bird*
                                                        DANIEL G. BIRD
                                                        KELLOGG, HUBER, HANSEN, TODD,
                                                           EVANS & FIGEL, P.L.L.C.
                                                        1615 M Street, N.W., Suite 400
                                                        Washington, D.C. 20036
                                                        (202) 326-7900

                                                        *Counsel for Defendant-Appellant-*
                                                        *Cross-Appellee*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

Nos. <u>14-2256(L) & 14-2296</u>        Caption:  <u>Knox Energy, LLC, et al.</u>
                                        <u>v. Gasco Drilling, Inc.</u>

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    Type-Volume Limitation:  Appellant's Opening Brief, Appellee's Response
      Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words
      or 1,300 lines.  Appellee's Opening/Response Brief may not exceed 16,500
      words or 1,500 lines.  Any Reply or Amicus Brief may not exceed 7,000
      words or 650 lines.  Counsel may rely on the word or line count of the word
      processing program used to prepare the document.  The word-processing
      program must be set to include footnotes in the count.  Line count is used
      only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)
or 32(a)(7)(B) because:

☒    this brief contains 13,999 words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses monospaced typeface and contains [_____] lines of
      text, excluding the parts of the brief exempted by Fed. R. App. P.
      32(a)(7)(B)(iii)

2.    Typeface and Type Style Requirements:  A proportionally spaced typeface
      (such as Times New Roman) must include serifs and must be 14-point or
      larger.  A monospaced typeface (such as Courier New) must be 12-point or
      larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and
the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒    this brief has been prepared in a proportionally spaced typeface using
      Microsoft Word 2007 in 14-point Times New Roman; *or*

☐    this brief has been prepared in a monospaced typeface using
      [_____] in [_____].

/s/ *Daniel G. Bird*

DANIEL G. BIRD
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Defendant-Appellant-
Cross-Appellee*

April 6, 2015

## CERTIFICATE OF SERVICE

I hereby certify that, on April 6, 2015, I electronically filed the foregoing Page-Proof Opening Brief for Defendant-Appellant Gasco Drilling, Inc. with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished through the appellate CM/ECF system.


  /s/ *Daniel G. Bird*
Daniel G. Bird